(No. 82-CC-2354-

Elizabeth Bennett, Marie Serletic, and V.V. Bennett Co., Inc., Claimants, *v.* The State of Illinois, Respondent.

*Opinion filed June 12, 1986.*

Casey & Casey, for Claimants.

Neil F. Hartigan, Attorney General (William E. Webber, Assistant Attorney General, of counsel), for Respondent.

MONTANA, C.J.

This is a claim for damages suffered by Claimants due to flooding allegedly caused by Respondent. A hearing was held on January 31, 1985, and February 1, 1985, before Commissioner Robert A. Barnes, Jr. Both parties have filed their briefs and Commissioner Barnes has duly filed his report. The Court heard oral arguments concerning the claim on May 7, 1986.

Elizabeth Bennett and Marie Serletic owned real estate commonly known as 1090 West Taintor Road, Springfield, Illinois. The real estate was described in part as the West 80′ of the North 150′ of Lot 4 of William and Gersham Jayne's Plat. It was improved with a combination residence-store building. V.V. Bennett Co., Inc. was a corporation engaged in the business of retail sales of horse equipment and riding apparel at 1090 West Taintor Road. The individual Claimants were the shareholders and officers of the corporate Claimant.

Elizabeth Bennett died testate October 31, 1982, and her will was admitted to probate by the Circuit Clerk of Sangamon County. Marie Serletic was the sole residuary legatee under her will. 1090 Taintor Road was owned in joint tenancy by decedent and Marie Serletic; the latter succeeded to entire ownership of the real estate. A motion to substitute Marie Serletic for the

decedent was filed December 27, 1984. Respondent had no objection to the motion to substitute Marie Serletic.

The Department of Agriculture of the State of Illinois owned the Illinois State Fairgrounds, which consisted of 300 acres bounded on the north by Taintor Road and on the east by Peoria Road in the northeast quarter of the City of Springfield, Illinois. The sewer system of the fairgrounds included storm sewers, sanitary sewers and combination storm and sanitary sewers. The Springfield Sanitary District complained that the sanitary sewers were overloading its treatment plant with storm runoff while the Illinois Environmental Protection Agency complained that the storm sewers were discharging untreated sewage onto the ground and into streams. To meet the complaints, the Department of Agriculture, through the Capital Development Board, chose in 1980 to rehabilitate the sewer system of the fairgrounds by separating the sanitary sewers and storm sewers. A private engineer was hired to prepare plans and the project was begun in the Spring of 1981.

To effect separation of the sanitary and storm sewers it was necessary to disconnect or cap the diversionary facilities, including one situated approximately 120 yards southwest of 1090 Taintor Road. The diversionary facilities connected the sanitary sewers and storm sewers permitting heavy flows in one to be shunted into the other. Building downspouts and curb drains of the fairgrounds were connected with the sanitary sewers and there were undisclosed connections between the storm sewers and the sanitary sewers.

On July 27, 1981, and August 2, 1981, heavy rainfalls occurred and Claimants' property flooded. It appears from the record that the capping of the diversionary facility southwest of Claimant's property caused the

sanitary sewers, which were still carrying surface runoff, to become overloaded in times of heavy rainfall and discharge the excess water through a sanitary manhole onto the Claimants' real estate. In effect, the capping of the diversionary facility made the area a retention pond to hold surface runoff from the fairgrounds until it drained off. The evidence also indicates that prior to the capping of the diversionary facility, Claimants' property had never flooded.

On both July 27, 1981, and August 2, 1981, the excess water discharged onto Claimants' real estate entered the basement of the residence-store building through the back door. On each occasion attempts were made to carry inventory and equipment stored in the basement upstairs. Testimony established that the cost of damage suffered on July 27, 1981 amounted to $1,000. Damage to the building and the business on August 2, 1981, was more severe because the Claimants were forced to stop their efforts to remove the inventory and equipment when water in the basement approached the master switch for the electricity. The total amount of the damage suffered from flooding on both days was $36,126.24.

We find that we agree with Claimants' assertion that application of the doctrine of *res ipsa loquitur* is appropriate in this case. The flooding which caused the damage to Claimants' real estate was from property solely in the possession and control of the State, and such flooding had not occurred prior to the alteration of the diversionary facility southwest of Claimants' real estate. The Claimants in no way contributed to the happening of the damage. It, therefore, is appropriate to infer negligence on the part of the State in the design or construction of the sewer improvements. The State's

contention that it was not solely in control of the sewer system because the flooding may have been aggravated by a plugged drain on adjoining property is without merit.

Having found the application of the doctrine of *res ipsa loquitur* to be appropriate in this case, we further find that the State failed to rebut the *prima facie* inference of negligence raised by the application of the doctrine. The Claimants are therefore entitled to receive an award of $36,126.24.

Claimants further contend they are entitled to receive an award for attorney fees and costs based either on section 45 of the Environmental Protection Act (Ill. Rev. Stat., ch. 111½, par. 1045) or section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat., ch. 110, par. 2—611). We find that both of these contentions are without merit. Claimants are therefore not entitled to receive an award for attorney fees and costs.

Wherefore, it is hereby ordered that an award of $36,126.24 be, and hereby is, awarded to the Claimants in full and final satisfaction of this claim.